Roger L. Cohen (004409)
Kathi Mann Sandweiss (011078)
**JABURG & WILK, P.C.**
3200 N. Central, Suite 2000
Phoenix, AZ 85012
(602)248-1000
rlc@jaburgwilk.com
kms@jaburgwilk.com

Attorneys for Defendants Dennis Danzik and Elizabeth Danzik

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| CHRISTOPER LARSON,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>WHITE MOUNTAIN GROUP, LLC, a Delaware limited liability company; SOLVERDI WORLDWIDE, LTD., a Australian corporation; RICHARD CARRIGAN and JANE DOE CARRIGAN, husband and wife; DENNIS DANZIK and JANE DOE DANZIK, husband and wife,<br><br>　　　　　　Defendants. | Case No. 2:11-cv-01111-FJM<br><br>**MOTION TO SET ASIDE DEFAULT** |

Pursuant to Rule 55(c), Fed.R.Civ.P., Defendants Dennis Danzik ("Mr. Danzik") and Elizabeth Danzik ("Mrs. Danzik") move to set aside the entry of default entered against them for the reason that the entry of default was the result of mistake, inadvertence, surprise or excusable neglect, or is otherwise subject to being set aside for good cause under Rule 55.

That good cause exists to set aside the default is readily apparent on consideration of the circumstances surrounding the filing and service of this lawsuit. Among other things, (1) service was purportedly effected on Mrs. Danzik, who was alone in her house

13026-0/KMS/RLC/921681_v2

while her husband was working out of the country, by "drop service," consisting of copies of the summons and complaint being thrown into a flower pot at her home; (2) the circumstances, including the process server's lack of knowledge of Mrs. Danzik's first name, were reasonably believed to be suspicious and lacking the indicia of a valid legal matter; and (3) because the Danziks were not a party to the contract described in the Complaint, made none of the purported representations described in the Complaint, and have none of the purported investment proceeds complained of, they had no reason to suspect either that they would be subject to a lawsuit or that they were being required to appear in this matter.

Nor have the Danziks been dilatory in seeking relief from the entry of default. When Mr. Danzik first became aware, by third-party communications, of the existence of this lawsuit, he contacted the principal defendant, Richard Carrigan, who stated that he would take care of this matter; however, as Mr. Danzik has just discovered, shortly after their conversation, Mr. Carrigan was rushed to a hospital where he was diagnosed with myeloid leukemia, and was thus unable to take steps to deal with Plaintiff's purported claims. Thereafter, upon discovering that the matter had not been resolved by Mr. Carrigan, the Danziks retained undersigned counsel, who were already representing them in other legal matters, and directed them to file the present Motion.

Finally, the Danziks have a number of dispositive, meritorious defenses to Plaintiff's claims. Among other things, Mr. Danzik had no involvement in the negotiations and transactions alleged in the Complaint, made no representations of any sort to induce Plaintiff to enter into any agreements with the remaining parties, and

13026-0/KMS/RLC/921681_v2

personally received no money or other consideration from Plaintiff.  More seriously, there exist entirely dispositive legal defenses to the civil racketeering claim (Count X).  The Complaint fails to specify either federal or state law but, as to either, the underlying predicate acts are alleged to constitute securities fraud, and the claim is therefore precluded by the Private Securities Litigation Reform Act, 18 USC § 1964(c) and by A.R.S. § 13-2314.04.  Moreover, to the extent Plaintiff intended to rely on Arizona law, the claim is framed in an illegal manner, in that use of the word "racketeering" is specifically forbidden under Arizona law. See A.R.S. §13-2314.04(S).[1]

Under these circumstances, the entry of default must be set aside, as (a) the Danziks have not engaged in culpable conduct that led to the default; (b) the Danziks have a meritorious defense; and (3) reopening the default judgment will not prejudice Plaintiff. *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).

This Motion is supported by the attached Memorandum of Points and Authorities, the exhibits attached hereto and the record before the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  PREFATORY STATEMENT – NINTH CIRCUIT LAW FAVORS DECISIONS ON THE MERITS.**

The Ninth Circuit Court of Appeals makes clear that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Signed Personal*, 615 F.3d at 1091; *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir.1984); see also *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d

---

[1] These defenses are assertable whether or not the present motion is granted. Even under default. *See, Cripps v. Life Ins. Co. of North America*, 980 F.2d 1261, 1267 (9th Cir. 1992) (claims that are legally insufficient are not established by default).

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

13026-0/KMS/RLC/921681_v2

1097, 1103 (9th Cir.2006); *Speiser, Krause & Madole P.C. v. Ortiz*, 271 F.3d 884, 890 (9th Cir.2001).  As the Court explains, "[o]ur rules for determining when a default should be set aside are ***solicitous towards movants***." *Signed Personal*, 615 F.3d at 1089.

Default judgments are, moreover, highly disfavored by the courts; cases should be decided upon their merits whenever reasonably possible. *Westchester Fire Ins. Co. v. Mendez,* 585 F.3d 1183, 1189 (9th Cir. 2009).

The Complaint itself is a morass of over-pleading and high handed requests for relief.  As best as can be determined, Larson is aggrieved by the alleged non-performance of Defendant White Mountain Group, LLC, under a promissory note.  Not content to seek simple breach of contract damages, however, Larson seeks treble damages, punitive damages, injunctions freezing assets, orders reorganizing entire companies, and even orders imposing constructive trusts on company assets.

Given the exigencies of this situation, coupled with the utter lack of prejudice to Plaintiff, there is no reason why this case should depart from the established principles of federal law.  Because the guiding principle is that cases should be decided on their merits, any doubt as to whether the default should be set aside must be resolved in Danzik's favor, and any argument to justify the harsh and unjust result of this case – ***the entry of a default judgment against a party who has no liability*** – must be rejected in the interests of fairness and substantial justice.

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Complaint.

On June 2, 2011, Plaintiff Christopher Larson filed a Complaint against Mr. Danzik, "Jane Doe Danzik," and others for breach of contract, fraud, securities fraud, consumer fraud, racketeering and conversion.  The Complaint alleges claims arising out of a purported promissory note in favor of Larson and signed by Defendant White Mountain Group, LLC ("White Mountain"), a Delaware limited liability company.  The Complaint alleges further that White Mountain agreed to secure the loan with shares of stock in

4

Defendant Solverdi Worldwide, Ltd. ("Solverdi"), an Australian company. There is no allegation of any connection or relationship between Mr. Danzik and White Mountain.

The few references to Mr. Danzik in the Complaint lack the degree of specificity sufficient to place him on notice of the factual basis for any claims against him, and are clearly insufficient to satisfy the specific pleading requirements of Rule 9(b) and (f): In Counts V and VII, for fraud and consumer fraud, against "all Defendants," Larson alleges that "Defendants Danzik and Solverdi made statements to Plaintiff that Defendant Solverdi intended to transfer 50,000 shares of stock to Plaintiff." There is no allegation as to when or where the purported statement was made, who was present, or any other specifics of the purported statement. In Count VI, for securities fraud, also against "all Defendants," Larson alleges that "Defendants Danzik and Carrigan made improper and untruthful statements to Plaintiff to induce Plaintiff to enter into the Note and Guarantee, and to divest Plaintiff of the funds loaned thereunder." Again, there is no specificity as to when or where such statements were purportedly made, and no specificity as to the nature of the statements; there is no disclosure as to what exactly was said or why the statements were purportedly "improper" or "untruthful." In Count VIII, for negligent misrepresentation, against "all Defendants," Larson alleges that "Defendants Danzik and Solverdi breached their duties to Plaintiff by making statements that Defendant Solverdi intended to transfer 50,000 shares of stock to Plaintiff." In addition to the absence of specificity as to when, where, how and why, there is no specific allegation of any duty owed from Mr. Danzik to Plaintiff.

### B. Circumstances of Purported Service of Process.

On June 14, 2011, at approximately 9:00 p.m., an individual came to the gate of the Danzik residence, and used the telephone located there to call the residence. Mr. Danzik was out of the country and Mrs. Danzik was not at home. The Danziks' 14 year old daughter answered the telephone, and because the Danziks were not at home at the time, the individual gave the 14 year old girl his name and telephone number so that her parents could call him back. When Mrs. Danzik arrived home, she telephoned the individual and

5

he told her that he had papers for her, but he did not say anything about her husband, Dennis Danzik. Mrs. Danzik told the person that she would be available the next day between 9 a.m. and 11 a.m. and that he could return at that time. (Elizabeth Danzik Declaration).

The next morning, Mr. Danzik advised Mrs. Danzik not to accept papers and advised that he would deal with the matter when he returned. Later that same morning, the person came to the gate of the residence, and Mrs. Danzik allowed him to come to the door. However, when he arrived at the door, he did not identify himself as a legal process server and there was nothing in his outward appearance to identify him as a legally authorized process server or to otherwise suggest legal authorization or credibility. (*Id.*).

The man appeared at the door for approximately 20 seconds, showed Mrs. Danzik a white paper with staples and advised that he had papers for her husband. Again, the person did not identify himself as a legal process server and there was nothing in his outward appearance to identify him as a legally authorized process server or to otherwise suggest legal authorization or credibility. Mrs. Danzik advised the man that her husband was traveling out of country, and that he would need to return. The man advised that the papers were for her as well, but he did not know her name. He pointed to the "Jane Doe" on the paper, advised that she could accept the papers for her husband, and then threw all the paperwork in a flower pot and left. (*Id.*).

Mrs. Danzik neither looked at the papers nor touched them. She was suspicious because he did not know her name, and the papers referred to "Jane Doe," rather than Elizabeth.[2]

The first time Mr. Danzik became aware of the lawsuit was when Tony Carr of Ridgeline Energy Services, Inc. ("Ridgeline"), a publicly-traded Canadian company with which Mr. Danzik has ongoing business dealings, called Mr. Danzik on the road, and advised that legal papers pertaining to Mr. Danzik had been received by the TSX Venture

---

[2] Had Mrs. Danzik known to connect the papers with Plaintiff, the omission of her name would have been an even greater cause for suspicion, as Mr. Larson has been to her home, and conversed with her, on multiple occasions, and certainly knows her true name. (Elizabeth Danzik Declaration).

6

13026-0/KMS/RLC/921681_v2

Case 2:11-cv-01111-FJM   Document 27   Filed 09/06/11   Page 7 of 17

Exchange ("TSX"). Mr. Carr provided no details, telling him only that TSX had gotten some paperwork on Mr. Danzik and that he would receive something from TSX. Mr. Danzik subsequently checked his telephone and e-mail, and saw a copy of the complaint in this matter attached to an e-mail from a representative of TSX. Mr. Danzik opened the e-mail on August 16, 2011 and immediately called one of the lawyers, whose name he does not now recall, listed on the caption of the Complaint. Mr. Danzik asked whether there was a civil suit with Christopher Larson; the lawyer advised that there was a lawsuit, but did not mention a default. Mr. Danzik advised Plaintiff's lawyer that he would have his own lawyer contact him in a couple of days. (Declaration of Dennis Danzik).

Immediately afterwards, Mr. Danzik telephoned Richard Carrigan, a named defendant in this case and the owner and manager of White Mountain. Mr. Carrigan was unaware of the lawsuit. After Mr. Danzik provided Mr. Carrigan with a copy of the Complaint, Mr. Carrigan promised to take care of it. The following week, at the time unbeknownst to the Danziks, Mr. Carrigan was rushed to the hospital with an extremely elevated white blood count. On Monday, August 29, 2011, Mr. Carrigan was diagnosed with myeloid leukemia, and was advised by his doctors that he faces eight months of chemotherapy. (*Id.*)

On Wednesday, August 31, Mr. Danzik learned of Carrigan's illness and realized that the lawsuit had not been dealt with by Mr. Carrigan. He accordingly contacted Jaburg & Wilk, who are presently representing him in other matters, for purposes of representation in this matter. (*Id.*) Upon investigation, undersigned counsel on Thursday September 1, 2011, determined that a default had been entered against the Danziks. The present Motion is filed on the second judicial day after the Danziks thus became aware of the entry of default.

Undersigned counsel discovered over the Labor Day weekend that the matter had been referred to Magistrate Mark Aspey for post-default hearing and that on September 2, 2011, Judge Aspey entered an order setting a hearing on damages for September 13, 2011.

7

13026-0/KMS/RLC/921681_v2

The Danziks file contemporaneously herewith (in Judge Aspey's Court) a motion to stay the damages hearing pending a determination of the present motion.

### C.     Background on Transactions.

White Mountain is the parent of a set of limited liability companies established to make investments in various companies. Mr. Carrigan is the sole owner of White Mountain. Mr. Danzik is not, and never has been, an owner of the company. (*Id.*).

Based upon Mr. Danzik's understanding, Larson and Mr. Carrigan, who had had previous business dealings, at some point discussed Larson becoming involved in White Mountain. That involvement had two aspects: First, Larson sought to become a partner and/or an owner of White Mountain, and invested $175,000.00 into the company, as part of funds raised by Mr. Carrigan to allow White Mountain to take over Solverdi, an Australian public company, of which Mr. Danzik was interim Chief Executive Officer (CEO). Second, from late June 2009 to October 2009, Larson was Chief Financial Officer (CFO) of Solverdi. As CEO of Solverdi, Mr. Danzik observed Larson's work as CFO, and determined him to be miserably unsuccessful in the job, doing faulty work and showing up for work in shorts and flipflops. Mr. Danzik was not, however, a party to any contract between Larson and White Mountain or Larson and Solverdi.[3] Nor did Mr. Danzik have any role in negotiating any of the contracts or agreements between Larson and either company. Mr. Danzik made no representations to Larson; nor was he in any position to make any representations. Mr. Danzik was not party to the discussions or negotiations leading up to execution of the promissory note or the guaranty, and is not a party to either document. Specifically, and contrary to the allegations of the Complaint, Mr. Danzik made no representations with respect to the 50,000 shares of stock. (*Id.*).

The allegations of fraud relate to the note and guaranty dated October 29, 2009, but again, Mr. Danzik had no involvement in their negotiation. All negotiations were done by Mr. Carrigan. Mr. Danzik's only involvement was to insist that the mutual release (attached as Exhibit B to the Complaint), release Solverdi. (*Id.*).

---

[3] Mr. Danzik signed the Mutual Release attached as Exhibit B to the Complaint in his capacity as CEO of Solverdi.

8

13026-0/KMS/RLC/921681_v2

In any event, to Mr. Danzik's knowledge, the 50,000 shares are available to Larson, but until the present Complaint was filed, Larson made no demand for them. Indeed, after Larson's employment as CFO was terminated, Mr. Danzik never heard from him again, until news was released on the Internet regarding the proposed purchase by Ridgeline of a company owned by Mr. Danzik, and Larson's apparent belief that Danzik might be a deep pocket defendant. (*Id.*)

Except that Mr. Carrigan is now seriously ill, Mr. Danzik believes that he would be handling this matter and would have been ready, willing and able to resolve it before default was entered against the Danziks. (*Id.*)

## III.  DANZIK IS ENTITLED TO RELIEF UNDER RULE 55(C)

The Federal Rules provide that a "court may set aside an entry of default for good cause...." Fed. R. Civ. Pro. 55(c). To determine "good cause", a court must consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party. *Signed Personal,* 615 F.3d at 1091. This standard is the same as is used to determine whether a default judgment should be set aside under Rule 60(b). *Id.* Crucially, however, the Ninth Circuit gives particular scrutiny to default judgments and mandates that District Courts be guided by the rule that, whenever possible, cases be decided on the merits. *Id.* Thus, "[w]hile the same test applies for motions seeking relief from default judgment under both Rule 55(c) and Rule 60(b), the test is more liberally applied in the Rule 55(c) context," such as this case. *Id.,* citing *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir.2009). This is because in the Rule 55 context there is no interest in the finality of the judgment with which to contend. *Id.*; see also *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir.1986).

Where a defendant seeks relief under Rule 60(b)(1) based upon "excusable neglect," the court applies the same three factors governing the inquiry into "good cause" under Rule 55(c). *Brandt v. American Bankers Ins. Co.Of Fla.*, 2011 WL 3487069, 2 (9th

9

Cir. 2011). The determination of what conduct constitutes "excusable neglect" under Rule 60(b)(1) and similar rules "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.*, citing *Pioneer Inv. Svcs. Co. v. Brunswick Assoc. Ltd.,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

### A. Danzik's Failure to Answer is Excusable and was not the Product of Culpable Conduct.

One court has described conduct as culpable if it is "willful" or "in bad faith" or "if it is part of a deliberate trial strategy." *Accu-Weather, Inc. v. Reuters Ltd.*, 779 F.Supp. 801, 804 (M.D.Pa.1991). Conversely, conduct is not culpable, and default is properly set aside, where there is no evidence that defendant's conduct in allowing the default was willful or in bad faith. *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3rd Cir. 1982) ("Indeed, the record tends to indicate no more than that defendant or his counsel was neglectful").

The procedural history shows a series of unfortunate events and misunderstandings complicated by medical tragedy. First, given his minimal involvement with Larson and the sheer absence of any material involvement, either as a principal in a company or directly, in any business transactions with Larson, Mr. Danzik was caught totally unaware of any purported dispute; he had no reason to believe he would be sued by Larson. Second, Mr. Danzik is fully capable of, and committed to protecting himself and his assets in legal matters; had he understood that he and his wife had been served with process, he would have immediately hired counsel to appear and defend the lawsuit. (Declaration of Dennis Danzik). Indeed, undersigned counsel have represented, and continue to represent the Danziks in several matters unrelated to the present case, and at all times would have been prepared to appear in this case had they known of its existence. However, given the late night visit from the purported process server, the failure to properly name his wife when her name was known to the Plaintiff, the drop service in a flower pot, and other suspicious circumstances, Mr. Danzik was unaware and was not properly on notice of a valid lawsuit, and thus did not immediately seek counsel. Third, once Mr. Danzik became aware that a lawsuit was pending, but before he knew of the entry of default, he acted

reasonably in (a) contacting one of Larson's lawyers, who confirmed the pendency of the action but did not mention either that the Danziks had purportedly been served or that default had been entered, and (b) contacting Mr. Carrigan, who promised to resolve the matter. Finally, once Mr. Danzik became aware of Mr. Carrigan's sudden illness, and consequent inability to deal with legal matters such as this lawsuit, Mr. Danzik retained undersigned counsel, who discovered the existence of the default and moved promptly to have it set aside.

Litigation is not intended to be a game of "gotcha." Assuming, *arguendo*, that service of process on the Danziks was sufficient, it is undeniably clear that the Danziks had no contemporaneous knowledge that they had been served with a lawsuit, and that their failure to grasp the full nature of the situation was both reasonable and, once discovered, promptly and properly addressed. Under these circumstances, the Danziks' failure to appear is the result of excusable neglect on their part, and to deny them the right to appear and defend against Larson's claims, would be extraordinarily harsh and unjust.

### B. The Danziks Have Meritorious Defenses.

The Danziks have numerous factual and legal defenses to Larson's claims, the effect of which, in the absence of a default, is to preclude any relief against these Defendants.

The core of Plaintiff's Complaint against the Danziks is that Mr. Danzik somehow made a fraudulent misrepresentation to induce Larson to do something with respect to White Mountain. Mr. Danzik categorically denies making any representations to Larson; in fact, his declaration shows that he was not involved in any of the communications and negotiations leading to Mr. Larson's contracts with White Mountain, and could not have been the source of any representations regarding those contracts. (Dennis Danzik Declaration). Likewise, Mr. Danzik's declaration shows that the factual predicate for all of Larson's claims – that he was promised, but did not receive, 50,000 shares of Solverdi stock, is questionable at best, as, to Mr. Danzik's knowledge, the stock has always been available for issuance. (*Id.*) Finally, Mr. Danzik received no property from Larson and

11

1  thus cannot be guilty of the tort of conversion. (*Id.*)  The claims against the Danziks, in short, are utterly and completely lacking in factual basis.

In addition, the Complaint, on its face, is subject to a myriad of legal defenses.

First, with respect to Larson's fraud claim, the Complaint is defective for failure to allege with particularity the nine elements of fraud.  See Rule 9(b), Fed.R.Civ.P.; *Taeger v. Catholic Family and Community Services*, 196 Ariz. 285, 294 (App. 1999).  To prove common law fraud, a plaintiff must establish nine elements: (1) a representation, (2) its falsity, (3) its materiality, (4) the speakers knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the information should be acted upon by the hearer and in a manner reasonably contemplated, (6) the hearer's ignorance of the information's falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury.  *Id.* at 294, 995 P.2d at 730; See also *Echols v. Beauty-Built Homes, Inc*. 132 Ariz. 498, 500 (1982).

Under the comparable federal rule, the Ninth Circuit Court of Appeals has recently confirmed that Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Moreover, an allegation of time or place is material when testing the sufficiency of a pleading. Rule 9(f).

Plaintiff has failed to satisfy the requirements of Rule 9 and well-established Arizona law, in that he has not stated with particularity the circumstances constituting the alleged fraud.  Larson claims that Mr. Danzik made certain statements regarding the stock. Mr. Danzik vigorously denies he made any representations in connection with the stock. But, in any event, on the face of the Complaint, there is an absence of the required "who, what, when, where, and how" of the purported misstatements.  If Defendants Danzik, Carrigan and Solverdi (a company) did make such statements, did they speak in tandem? When were such statements made?  In what location?  Who was present?  What were the circumstances?  Was it orally or in writing?  Was it in person or on the phone?  Because

13026-0/KMS/RLC/921681_v2

the Complaint fails to set forth with particularity these required factors, the Complaint is insufficient as a matter of law.

The other claims similarly lack any specificity and fail to meet the plausibility requirement of *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940 (U.S. 2009), which, of course, admonishes that whether a complaint states a plausible claim is context-specific, requiring the court to "draw on its experience and common sense." With respect to the claim for conversion, there is no specific allegation as to any wrongdoing by Danzik; moreover, Danzik denies that he possesses any of Plaintiff's investment funds or that he has exercised dominion or control over the funds and, again, intends to fully defend. See *Miller v. Hehlen*, 209 Ariz. 462, 472, 104 P.3d 193, 203 (App. 2005) (Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel). The claim for "consumer fraud" pursuant to A.R.S. § 12-1522 would likewise fail the test of proper pleading under *Iqbal*, 129 S.Ct. 1937, in that Plaintiff has neither identified himself properly as a "consumer" entitled to relief under the statute nor has properly identified the purported "merchandise" for which relief may be granted under the statute. Moreover, Ninth Circuit law is clear that a person making a claim under Arizona's Consumer Fraud Act must be a buyer and a target of deceptive advertising. *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992). Given that Mr. Larson is neither, he cannot maintain an action under A.R.S. § 12-1522.

With respect to the claim for "negligent misrepresentation," Plaintiff alleges that Mr. Danzik breached a duty, but fails to allege that Mr. Danzik owed any duty to Plaintiff. See *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 29, 945 P.2d 317, 340 (App.1996) (One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise

13026-0/KMS/RLC/921681_v2

reasonable care or competence in obtaining or communicating the information). There being no proper allegations and no specificity of allegations, coupled with Mr. Danzik's explanation of the transactions and his limited involvement, it is clear that Mr. Danzik has, at minimum, a meritorious defense.

Finally, there is no factual basis to the claim for "civil racketeering," and the legal defenses to such claim are dispositive. It is unclear by the Complaint whether Larson might be referring to federal or state "racketeering," as no statute is identified. To the extent Larson intended to impose a claim under Arizona law, the entire count is illegally framed, in that use of the word "racketeering" is specifically forbidden under Arizona law. See A.R.S. §13-2314.04(S) (The terms used to refer to acts of racketeering or a pattern of racketeering activity shall be "unlawful acts" or "a pattern of unlawful activity").

As to both Arizona and Federal law, the claims are illegal because the underlying predicate acts are alleged to constitute securities fraud; such a claim is specifically precluded by both Arizona and Federal Law. The Private Securities Litigation Reform Act, 18 USC § 1964(c) provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that ***no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.*** The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

Similarly, the Arizona statute specifically precludes a claim under A.R.S. § 13-2314.04 that relies, as its predicate act, on purported securities fraud:

> A person who sustains reasonably foreseeable injury to his person, business or property by a pattern of racketeering activity, or by a violation of section 13-2312 involving a pattern of racketeering activity, may file an action in superior court for the recovery of up to treble damages and the costs of the suit, including reasonable attorney fees for trial and appellate representation. If the person against whom a racketeering claim has been asserted, including a lien, prevails

14

> on that claim, the person may be awarded costs and reasonable attorney fees incurred in defense of that claim. ***No person may rely on any conduct that would have been actionable as fraud in the purchase or sale of securities to establish an action*** under this section except an action against a person who is convicted of a crime in connection with the fraud, in which case the period to initiate a civil action starts to run on the date on which the conviction becomes final.

In *Howard v. America Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000), the Plaintiffs claimed that AOL committed securities fraud as part of a pattern of racketeering activity. The district court held that Plaintiffs could not use these claims to establish a RICO violation and the Ninth Circuit Court of Appeals agreed: "The claims implicate 'conduct that would have been actionable as [securities] fraud' and section 1964(c) bars their use as RICO predicates." 208 F.3d at 749

Nor does the claim come close to meeting the requirements of either state or federal law. The Arizona Court of Appeals makes clear that the Arizona legislature incorporated the federal requirement that a plaintiff demonstrate a "pattern of racketeering activity," the Supreme Court's interpretation of "pattern" as requiring that the acts be "related" and "continuous," and the Court's detailed definition of "related" acts. *Lifeflite Medical Air Transport, Inc. v. Native American Air Services, Inc*., 198 Ariz. 149, 152-153, 7 P.3d 158, 161-162 (App. 2000), citing A.R.S. § 13-2314.04(S)(3)(a)(ii), (iii). Accordingly, the Court held that because of the legislature's obvious reliance on federal interpretation in fashioning the 1993 amendments, "it is reasonable to conclude that the legislature also intended to follow the Supreme Court's definition of 'continuous' to require that the related predicate acts extend 'over a substantial period of time,' i.e., over more than 'a few weeks or months.'" *Id.* A pattern is defined as "at least two acts of racketeering activity" within ten years of each other. 18 U.S.C. § 1961(5). Two acts are necessary, but not sufficient, for finding a violation. See *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The term "pattern" itself requires the showing of a relationship between the predicates and of the threat of continuing activity. *Howard,* 208 F.3d at 746. There is nothing in Count X of the

1  Complaint that would even begin to suggest a pattern of related activity sufficient to
2  comply with Arizona or Federal law.

3       Finally, Larson seeks awards of both punitive damages and treble damages in his
4  claim for "racketeering." Punite damages are not proper under RICO since the Act
5  already provides for treble damages. See *Standard Chlorine of Delaware, Inc. v.*
6  *Sinibaldi*, 821 F.Supp. 232, 252 -253 (D.Del.1992).

7       Claims that are legally insufficient are not established by default. *Cripps v. Life Ins.*
8  *Co. of North America,* 980 F.2d 1261, 1267 (9th Cir. 1992); *Danning v. Lavine*, 572 F.2d
9  1386, 1388 (9th Cir.1978); accord 6 J. Moore, Moore's Federal Practice ¶ 55.03[2], at 55-
10 20 to 21 (1992). Count X of the Complaint in this case, whether pled under state or
11 federal RICO statutes, are clearly barred as a matter of state and federal law and are,
12 indeed, illegally pled. It is improper for this Court to enter judgment under the RICO
13 statutes on a claim that is barred by law, simply because defendants failed to answer. It is
14 incumbent upon the district court to ensure that "the unchallenged facts constitute a
15 legitimate cause of action" prior to entering final judgment. *Marshall v. Baggett,* 616 F.3d
16 849, 853 (8th Cir. 2010) citing 10A C. Wright, A. Miller & M. Kane, Federal Practice and
17 Procedure § 2688 at 63 (3d ed.1998).

18      That Larson may have had a dispute with a former employer or may be owed
19 money by a company, is insufficient to set forth a claim of personal liability as to the
20 Danziks. The Danziks, at minimum, have meritorious defenses to all claims asserted
21 against them and intend, to the extent permitted to do so, to fully defend this matter on the
22 merits.

23     **C.   There is no Prejudice to Plaintiff**

24      Finally, Plaintiff cannot reasonably or with a straight face claim that he is
25 prejudiced by having to litigate on the merits. To maintain a default, under these
26 circumstances, would result in a windfall to Larson, to the extreme detriment to the
27 Danziks. There is no valid reason why Larson should be permitted to maintain the default
28

13026-0/KMS/RLC/921681_v2

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

and proceed with a hearing for default judgment, when to do so would controvert the established principle that cases are to be decided on their merits.

## IV. CONCLUSION

For the reasons set forth above, it is requested that the Court grant Danzik relief under Rule 55(c) and permit the matter to proceed on the merits.

DATED this 6th day of September, 2011.

**JABURG & WILK, P.C.**

*/s/ Roger L. Cohen*
Roger L. Cohen
Kathi Mann Sandweiss

*Certificate of Service*

I hereby certify that on 6th day of September, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Dax R. Watson
Chad R. Kaffer
MACK DRUCKER & WATSON, PC
3200 N. Central Avenue, Suite 1200
Phoenix, AZ 85012

*/s/ Ana M. Canby*

17

13026-0/KMS/RLC/921681_v2