Roger L. Cohen (004409)
Kathi Mann Sandweiss (011078)
**JABURG & WILK, P.C.**
3200 N. Central, Suite 2000
Phoenix, AZ 85012
(602)248-1000
rlc@jaburgwilk.com
kms@jaburgwilk.com

Attorneys for Defendants Dennis Danzik and Elizabeth Danzik

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| CHRISTOPHER LARSON,<br><br>Plaintiff,<br><br>v.<br><br>WHITE MOUNTAIN GROUP, LLC, a Delaware limited liability company; SOLVERDI WORLDWIDE, LTD., a Australian corporation; RICHARD CARRIGAN and JANE DOE CARRIGAN, husband and wife; DENNIS DANZIK and JANE DOE DANZIK, husband and wife,<br><br>Defendants. | Case No. CV 11-01111-FJM<br><br>**DECLARATION OF DENNIS DANZIK IN SUPPORT OF MOTION TO SET ASIDE DEFAULT** |

I, Dennis Danzik, declare:

1. I am a Defendant in the above matter.

2. The matters stated in this Declaration are known by me to be true.

3. The first time I became aware of this lawsuit was when Tony Carr of Ridgeline Energy Services, Inc. ("Ridgeline"), a publicly-traded Canadian company with which I have ongoing business dealings, called me on the road, and advised that legal papers pertaining to me had been received by the TSX Venture Exchange ("TSX"). Mr. Carr provided no details, telling me only that TSX had gotten some paperwork on me and that I would receive something from TSX.

13026-0/KMS/KMS/921453_v2

4.      I subsequently checked my telephone and e-mail, and saw a copy of the complaint in this matter attached to an e-mail from a representative of TSX. I opened the e-mail on August 16, 2011 and immediately called one of the lawyers, whose name I do not now recall, listed on the caption of the Complaint. I asked whether there was a civil suit with Christopher Larson; the lawyer advised that there was a lawsuit, but did not mention a default. I advised Plaintiff's lawyer that I would have my own lawyer contact him in a couple of days.

5.      Immediately afterwards, I telephoned Richard Carrigan, a named defendant in this case and the owner and manager of White Mountain. Mr. Carrigan was unaware of the lawsuit. After I provided Mr. Carrigan with a copy of the Complaint, Mr. Carrigan promised to take care of it. The following week, at the time unbeknownst to my wife and me, Mr. Carrigan was rushed to the hospital with an extremely elevated white blood count. On Monday, August 29, 2011, Mr. Carrigan was diagnosed with myeloid leukemia, and was advised by his doctors that he faces eight months of chemotherapy.

6.      On Wednesday, August 31, I learned of Carrigan's illness and realized that the lawsuit had not been dealt with by Mr. Carrigan. I accordingly contacted Jaburg & Wilk, who are presently representing me in other matters, for purposes of representation in this matter.

7.      White Mountain is the parent of a set of limited liability companies established to make investments in various companies. Mr. Carrigan is the sole owner of White Mountain. I am not, and never have been, an owner.

8.      Based upon my understanding, Larson and Mr. Carrigan, who had had previous business dealings, at some point discussed Larson becoming involved in White Mountain. That involvement had two aspects: First, Larson sought to become a partner and/or an owner of White Mountain, and invested $175,000.00 into the company, as part of funds raised by Mr. Carrigan to allow White Mountain to take over Solverdi, an Australian public company, of which I was interim Chief Executive Officer (CEO). Second, from late June 2009 to October 2009, Larson was Chief Financial Officer (CFO)

2

13026-0/KMS/KMS/921453_v2

of Solverdi. As CEO of Solverdi, I observed Larson's work as CFO, and determined him to be miserably unsuccessful in the job, doing faulty work and showing up for work in shorts and flipflops. I was not, however, a party to any contract between Larson and White Mountain or Larson and Solverdi[1]. Nor did I have any role in negotiating any of the contracts or agreements between Larson and either company. I made no representations to Larson; nor was I in any position to make any representations. I was not party to the discussions or negotiations leading up to execution of the promissory note or the guaranty, and am not a party to either document.

9. Specifically, and contrary to the allegations of the Complaint, I made no representations with respect to the 50,000 shares of stock.

10. The allegations of fraud relate to the note and guaranty dated October 29, 2009, but again, I had no involvement in their negotiation. All negotiations were done by Mr. Carrigan. My only involvement was to insist that the mutual release (attached as Exhibit B to the Complaint), release Solverdi.

11. In any event, the 50,000 shares are available to Larson, but until the present Complaint was filed, Larson made no demand for them. Indeed, after Larson's employment as CFO was terminated, I never heard from him again, until news was released on the Internet regarding Ridgeline's purchase of a company that I own, and Larson's apparent belief that I might be a deep pocket defendant.

12. To the best of my knowledge, the stock has always been available for issuance.

13. I received no property from Larson.

14. Except that Mr. Carrigan is now seriously ill, I believe that he would be handling this matter and would have been ready, willing and able to resolve it before default was entered against my wife and me.

15. Given my minimal involvement with Larson and the sheer absence of any material involvement, either as a principal in a company or directly, in any business

---

[1] I signed the Mutual Release attached as Exhibit B to the Complaint in my capacity as CEO of Solverdi.

3

13026-0/KMS/KMS/921453_v2

transactions with Larson, I was caught totally unaware of any purported dispute; I had no reason to believe I would be sued by Larson.

16. I categorically deny making any representations to Larson; I was not involved in any of the communications and negotiations leading to Mr. Larson's contracts with White Mountain, and could not have been the source of any representations regarding those contracts.

17. I understood and believed that I took reasonable steps to protect my legal interests by calling Plaintiff's counsel, and was not advised of the pendency of a default.

I declare under penalty of perjury that the foregoing statements are true and correct.

DATED this ___6___ day of September, 2011.

_____
Dennis Danzik