Roger L. Cohen (004409)
Kathi Mann Sandweiss (011078)
**JABURG & WILK, P.C.**
3200 N. Central, Suite 2000
Phoenix, AZ 85012
(602)248-1000
rlc@jaburgwilk.com
kms@jaburgwilk.com

Attorneys for Defendants Dennis Danzik and Elizabeth Danzik

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| CHRISTOPER LARSON, <br><br> Plaintiff, <br><br> WHITE MOUNTAIN GROUP, LLC, a Delaware limited liability company; SOLVERDI WORLDWIDE, LTD., a Australian corporation; RICHARD CARRIGAN and JANE DOE CARRIGAN, husband and wife; DENNIS DANZIK and JANE DOE DANZIK, husband and wife, <br><br> Defendants. | Case No. CV 11-01111-FJM <br><br> **DECLARATION OF ELIZABETH DANZIK IN SUPPORT OF MOTION TO SET ASIDE DEFAULT** |

I, Elizabeth Danzik, declare:

1.      I am a Defendant in the above matter.

2.      The matters stated in this Declaration are known by me to be true.

3.      On June 14, 2011, at approximately 9:00 p.m., an individual came to the gate of our residence, and used the telephone located there to call the residence. My daughter, age 14, answered the telephone, and because I was not there at the time, the individual gave my daughter his name and telephone number so that I could call him back. When I arrived home, I telephone the individual back and he told me he had papers for me, but he did not say anything about my husband, Dennis Danzik. I told the person that I

13026-0/KMS/VLM/921452_v3

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

1    would be available the next day between 9 a.m. and 11 a.m. and that he could come back

2    at that time.

3          4.      The next morning, my husband advised me not to accept papers and advised

4    that he would deal with the matter when he returned.

5          5.      Later that same morning, the person came to the gate of our residence, later

6    than the time frame I gave him, but I was still at the residence when he arrived. When he

7    called from the gate using the telephone located there, I let him through the gate so that he

8    could come to the door. When he arrived at the door, he did not identify himself as a legal

9    process server and there was nothing in his outward appearance to identify him as a

10   legally authorized process server or to otherwise suggest legal authorization or credibility.

11         6.      I advised the man that my husband was not at home and to return later. My

12   husband was travelling on business and was in Canada at that time.

13         7.      The man stayed at the door for approximately 20 seconds, and he showed

14   me a white paper with staples and advised that he had papers for my husband. Again, the

15   person did not identify himself as a legal process server and there was nothing in his

16   outward appearance to identify him as a legally authorized process server or to otherwise

17   suggest legal authorization or credibility. I advised the man that my husband was

18   traveling out of country, and that he would need to return. The man advised that the

19   papers were for me as well, but he did not know my name. He pointed to the "Jane Doe"

20   on the paper, advised that I could accept the papers for my husband, and then threw all the

21   paperwork in a flower pot and left.

22         8.      I neither looked at the papers nor touched them. I was suspicious because

23   he did not know my name, and the papers referred to "Jane Doe," not "Elizabeth."

24         9.      Had I known to connect the papers with Plaintiff, the omission of my name

25   would have been an even greater cause for suspicion, as Mr. Larson has been to my home,

26   and conversed with me, on multiple occasions, and certainly knows my true name.

27

28

2

13026-0/KMS/VLM/921452_v3

I declare under penalty of perjury that the foregoing statements are true and correct.

DATED this ___6___ day of September, 2011.

_____
Elizabeth Danzik

13026-0/KMS/VLM/921452_v3